UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PERRY ASHELMAN,

                                    Petitioner,

        v.

PATRICK GLEBE,

                                    Respondent.

No. C09-5570 BHS/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  April 2, 2010**

        This case has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4.   Petitioner Randy Ashelman filed a 28 U.S.C. § 2254 habeas corpus petition challenging a prison disciplinary hearing conducted at the Washington Corrections Center (WCC) resulting in the loss of 90 days good conduct time.  Dkt. 5.[1]  Respondent filed an answer and submitted relevant portions of the state court record.  Dkts. 16 and 17.

        Having carefully considered the parties' filings and the record relevant to the grounds raised in the petition, the undersigned recommends that Mr. Ashelman's habeas petition be denied and this action dismissed.

_____

[1] Petitioner amended the face page of his petition only to reflect the proper respondent.  Dkt. 10

REPORT AND RECOMMENDATION - 1

*STATEMENT OF THE CASE*

A.    *Basis of Custody*

Petitioner Randy Ashelman is currently serving a 57-month sentence in the Washington

Department of Corrections (DOC) pursuant to a Spokane County conviction for custodial

assault, committed on March 12, 2004.  Dkt. 17, Exh. 1.  His current earned early release date is

September 25, 2010.  *Id.*, Exh. 2.

Petitioner does not challenge his criminal conviction or sentence.  Dkt. 5.  He challenges

a prison disciplinary hearing conducted at the WCC in January 2009, which resulted in the loss

of 90 days good conduct time.  *Id.*, p. 1.

B.    *Factual Background*

On September 3, 2008, Mr. Ashelman was charged with committing a 651 infraction

based on Correctional Officer Douglas Metcalf's observation that "[o]n 9/3/08 at 0335 I/M

Ashelman was coaching I/M Benson #319067 in B108 to soak his sheet with water and to stuff

towels in his cell door track to keep it from opening."  Dkt. 17, Exh. 4, Attach. A (Serious

Infraction Report); see also Dkt. 5, p. 16 (marked as Exhibit F).[2]  The DOC advised Mr.

Ashelman in writing of his rights at prison disciplinary hearings and Mr. Ashelman requested

that inmate Al Davis provide a witness statement at his hearing.  *Id.*, Attach. B (Disciplinary

Hearing Notice/ Appearance Waiver).

At a hearing held on September 5, 2008, Hearing Officer Tony Dunnington found Mr.

Ashelman guilty of the 651 infraction and sanctioned him with 10 days isolation status in IMU

and 90 days loss of good time credit.  Dkt. 17, Exh. 3 (unnumbered attachment).  Mr. Ashelman

challenged this sanction in a personal restraint petition under Cause No. 82330-8.  *Id.*  The

---

[2] A 651 infraction prohibits inmates from "Inciting other to riot".  WAC 137-25-030, Category A, No. 651.

REPORT AND RECOMMENDATION - 2

Commissioner of the Washington Supreme Court dismissed the petition as moot after the DOC

stated that it would expunge the infraction and rehear the matter.  Dkt. 17, Exh. 23, p. 5 (citing *In*

*re Pers. Restraint of Higgins,* 152 Wn.2d 155, 162-63, 95 P.3d 330 (2005) (pending personal

restraint petition challenging prison disciplinary action, the department may expunge infraction

and hold a new hearing).

The DOC initially scheduled Mr. Ashelman's disciplinary rehearing for January 8, 2009.

However, the superintendent's designee continued the hearing to allow the hearing officer to

obtain witness statements and other documentation.  *Id*., Attach. C (Continuance of Disciplinary

Hearing).

Mr. Ashelman's disciplinary hearing was conducted by Hearing Officer Tony

Dunnington on January 21, 2009.  *Id.*, Attach. D (Disciplinary Hearing Minutes and Findings).

Hearing Officer Tony Dunnington summarized Mr. Ashelman's testimony at the hearing as

follows:

> My witness statement stated I was asleep.  I was woken up – I did tell a youngster
> in a cell next to me he should cover up with a towel for the other i/m is going to
> get sprayed.  I then went back to sleep.  I did not care about I/M Benson, he was a
> rapist.

Dkt. 17, Exh. 4, Attach. D.

Officer Dunnington also noted a conflict in the statements submitted by Mr. Davis:

> The two statements from I/M Davis conflict with each other.  One says Ashelman
> was asleep until I/M Benson was removed from the tier.  The other states I/M
> Davis woke him up before the cell entry.  I/M Ashelman in his testimony said he
> was woken up and then told or coached another inmate to cover his face because
> I/M Benson was going to get sprayed.

*Id.*

REPORT AND RECOMMENDATION - 3

Officer Dunnington considered the infraction report, Mr. Ashelman's testimony, the two witness statements provided by inmate Benson, and two witness statements from Allen Davis. *Id.*; see also Attachs. E and F (statements of Allen Davis).

Officer Dunnington found Mr. Ashelman guilty of the 651 infraction, noting that:

> I/M Ashelman's testimony proves that he was awake during the incident and could in fact coach another inmate how to combat effects of O-C. He also stated he looked down at I/M Benson.

Dkt. 17, Exh. 4, Attach. D.

Mr. Ashleman was sanctioned to 10 days in isolation with *credit for time served* and 90 days loss of good conduct time. *Id.* [emphasis added]. Officer Dunnington gave the following reason for the sanction:

> An inmate barricading himself in a cell, defying staff's orders to cuff up and present situation where others could be hurt is a riotous act. Aiding another in commission of a violation is same as commission of violation itself.

*Id.*

C.      *Procedural History*

Mr. Ashelman filed a pro se personal restraint petition with the Washington Supreme Court, raising the following issues:

> (1)     Due process rights violated because the hearing officer was wrongfully granted a continuance of the disciplinary hearing. (Petitioner cites to Sixth Circuit case law for proposition that police officer may be sued under Section 1983 for Fourth Amendment violation if warrant obtained through false statements).
>
> (2)     Due process violation because disciplinary hearing was not held within fifteen days as required by WAC policy.
>
> (3)     The hearing officer violated his right to a fair hearing by finding guilt only because he believed Mr. Ashelman did not like sex offenders and he was denied a different hearing officer.

REPORT AND RECOMMENDATION - 4

(4)     The hearing officer "doctored statements and engineered false statements." (Petitioner cites to Ninth Circuit case law for proposition that when "agents or informers engineer and direct criminal enterprise from start to finish, due process prevents conviction of defendant).

(5)     The hearing officer increased the sanction imposed on Petitioner and "took his level" in violation of Petitioner's "1st constitutional right."

Dkt. 17, Exh. 3.

The Washington Supreme Court dismissed his petition in a ruling by the commissioner. *Id.*, Exh. 6.

### *ISSUES FOR FEDERAL HABEAS REVIEW*

Mr. Ashelman presents four grounds for relief in his federal habeas corpus petition, summarized as follows:

1.     The hearing officer violated due process by doctoring witness statements to justify an unnecessary continuance of the disciplinary hearing.

2.     Petitioner's due process rights were violated when the DOC hearings panel did not review his appeal within 15 days.

3.     After the disciplinary hearing, the hearing officer doctored witness statements and had the corrections officer witnesses rewrite their statements after the hearing officer had already found Petitioner guilty.

4.     After Petitioner served 10 days in isolation as a sanction from the first hearing, the DOC expunged the infraction and held a second hearing, after which Petitioner was again found guilty and had to serve the 10 days again in isolation.

Dkt. 5, pp. 7, 11, 14, 19 (CM/ECF pagination).

### *EXHAUSTION*

Respondent concedes that Mr. Ashelman exhausted his first and third claims. Dkt. 16, p. 3. Respondent contends, however, that Mr. Ashelman's second and fourth claims, regarding the timeliness of his hearing and appeal and having to reserve 10 days in isolation, are unexhausted

REPORT AND RECOMMENDATION - 5

1   and procedurally barred as he raised these claims in his personal restraint petition in the

2   Washington Supreme Court on state grounds only.  *Id.*, citing Exh. 3, p. 2.  Further, because of

3   the state rule prohibiting successive petitions, Respondent argues that Mr. Ashleman's second

4   and fourth claims are procedurally barred in state court under RCW 10.73.140 and RAP 16.4(d),

5   and barred in federal court absent a showing of cause and prejudice or fundamental miscarriage

6   of justice.  Dkt. 16, p. 3.

7

8        For the reasons set forth more fully below, the undersigned agrees that Mr. Ashelman has

9   failed to exhaust his second and fourth claims for relief and that he is procedurally barred.

10                                      *EVIDENTIARY HEARING*

11        The decision to hold a hearing is committed to the court's discretion.  *Williams v.*

12  *Woodford*, 306 F.3d 665, 688 (9th Cir. 2002).    State court findings are presumptively correct in

13  federal habeas corpus proceedings, placing the burden squarely on the petitioner to rebut the

14  presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  In deciding whether to

15  grant an evidentiary hearing, a federal court must consider whether such a hearing could enable

16  an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant

17  to federal habeas relief.  *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007).  Because the

18  deferential standards prescribed by § 2254 of the Antiterrorism and Effective Death Penalty Act

19  (AEDPA) control whether to grant habeas relief, a federal court must taken into account those

20  standards in deciding whether an evidentiary hearing is appropriate.  *Id*.

21

22        An evidentiary hearing is not required where the petition raises solely questions of law or

23  where the issues may be resolved on the basis of the state court record.  *Totten v. Merkle*, 137

24  F.3d 1172, 1176 (9th Cir. 1998).  The petitioner must demonstrate that an evidentiary hearing

25  would materially advance his claims and explain why the record before the court, or an expanded

26

REPORT AND RECOMMENDATION - 6

record, is inadequate for review. *Totten*, 137 F.3d at 1176-77; see also Rule 8 of the Rules

Governing 2254 Cases. It is not the duty of the state court to ensure that the petitioner develops

the factual record supporting a claim. *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir.

2004) (citing *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir. 1994)); see also *Baja v.*

*DuCharme*, 187 F.3d 1075, 1079 (9th Cir. 1999); *In re Rice*, 118 Wash.2d 876, 884, 828 P.2d

1086, cert. denied, 506 U.S. 958 (1992).

Mr. Ashelman's claims raise questions of law only and may be resolved by a review of

the existing record. Therefore, no evidentiary hearing is required in this case.

*STANDARD OF REVIEW*

Federal courts may intervene in the state judicial process only to correct wrongs of a

constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). Pursuant to the federal habeas

statute for state convictions, a federal court may entertain an application for writ of habeas

corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or

law or treaties of the United States."  § 2254(a)(1995). The Supreme Court has repeatedly held

that federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S.

62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In a habeas corpus petition, the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) establishes the district court's standard of review of the state court's decision. *Barker*

*v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Under AEDPA, a federal court cannot grant a

writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in

state court unless the state court's adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or

REPORT AND RECOMMENDATION - 7

1
2          (2)  resulted in a decision that was based on an unreasonable determination
        of the facts in light of the evidence presented in the State court proceeding.

3   28 U.S.C. § 2254(d).

4          The AEDPA standard of review "demands that state-court decisions be given the benefit

5   of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

6
7          Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's

8   "clearly established precedent if the state court applies a rule that contradicts the governing law

9   set forth" in the Supreme Court's cases.  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting

10  *Williams*, 529 U.S. at 405-06).  A state court decision also is contrary to the Supreme Court's

11  clearly established precedent "if the state court confronts a set of facts that are materially

12  indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result

13  different from" that precedent.  *Id.*

14
15         A state court decision can involve an "unreasonable application" of the Supreme Court's

16  clearly established precedent in the following two ways: (1) the state court "identifies the correct

17  governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts"

18  of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the

19  Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses

20  to extend that principle to a new context where it should apply."  *Williams*, 529 U.S. at 407.

21  However, "[t]he 'unreasonable application' clause requires the state court decision to be more

22  than incorrect or erroneous."  *Lockyer*, 538 U.S. at 75.  That is, "[t]he state court's application of

23  clearly established law must be objectively unreasonable."  *Id.*

24
25         Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be

26  granted "if a material factual finding of the state court reflects 'an unreasonable determination of

REPORT AND RECOMMENDATION - 8

the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408

F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)).  As noted

above, however, "[a] determination of a factual issue made by a State court shall be presumed to

be correct," and the petitioner has "the burden of rebutting the presumption of correctness by

clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

*DISCUSSION*

A.    *Second and Fourth Claims  - Procedural Bar and Exhaustion*

In his second claim for habeas relief, Mr. Ashehman asserts that his due process rights

were violated when the DOC failed to respond to his appeal within 15 days.  Dkt. 5, p. 11.  In his

fourth claim for habeas relief, Mr. Ashehman asserts that the hearing officer sentenced him to 10

days in isolation even though he had already served 10 days in isolation after his first hearing,

where his infraction was later expunged.  *Id.*, p. 19.  Although Mr. Ashehman raised state law

versions of these claims in his personal restraint petition in the Washington Supreme Court, he

did not raise them on federal grounds.

A state prisoner must exhaust state remedies with respect to each claim before petitioning

for a writ of habeas corpus in federal court.  *Granberry v. Greer*, 481 U.S. 129, 134 (1987).

28 U.S.C. § 2254 (b)(1) states, in pertinent part, that:

 (b)(1) An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted unless it appears
that—

(A) the applicant has exhausted the remedies available in the courts of the State;
or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of
the applicant.

REPORT AND RECOMMENDATION - 9

28. U.S.C. § 2254 (b)(1) (Emphasis added.)

Claims for relief that have not been exhausted in state court are not cognizable in a federal habeas corpus petition. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1993), cert. denied, 513 U.S. 935 (1994). The exhaustion doctrine is based upon comity, not jurisdiction. *Rose v. Lundy*, 455 U.S. 509, 518 (1982). It is the petitioner's burden to prove that a claim has been properly exhausted and is not procedurally barred. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981).

A claim must be "fully and fairly" presented to the state's highest court so as to give the state courts a fair opportunity to apply federal law to the facts. *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78 (1971). The petitioner must present the claims to the state highest court even where such review is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Each claim must be presented to the state's highest court based upon the same federal legal theory and the same factual basis as the claim is subsequently asserted in federal court. *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982), cert. denied, 461 U.S. 916 (1983).

Petitioners must fairly present their federal claims to state courts in order to give the State the opportunity to pass upon and correct alleged violation of its prisoners' federal rights. If the state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. See *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971), internal quotation marks omitted); see also, *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992) (exhaustion must be "serious and meaningful").

REPORT AND RECOMMENDATION - 10

Vague references to broad constitutional principles such as due process, equal protection and a fair trial do not satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), cert. denied, 120 S. Ct. 815 (2000). A "claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray*, 518 U.S. at 163. Even where the petitioner argues an error deprived him of a "fair trial" or the "right to present a defense," unless the petitioner expressly states he is alleging a specific federal constitutional violation, the petitioner has not properly exhausted the claim. *Johnson*, 88 F.3d at 830-31.

The fact that a state law claim was "essentially the same" as the claim subsequently asserted in federal court does not satisfy the exhaustion requirement. *Id*. at 830. Citation to Washington case law, even if the case applied a standard similar to the federal standard, does not suffice to apprise the Washington courts of a federal claim. *Hiivala*, 195 F.3d at 1106-07. For purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief. *Gray*, 518 U.S. at 162-63.

When he asserted his second and fourth claims before the Washington Supreme Court, Mr. Ashelman presented these claims as violations of his "due process rights." Dkt. 17, Exh. 3, p. 2. However, a broad reference to due process alone is insufficient for exhaustion purposes. As noted above, "a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray*, 518 U.S. at 163. For purposes of exhausting state remedies, a claim for relief in habeas

REPORT AND RECOMMENDATION - 11

corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief. *Id.* at 162-63.

The record reflects that Mr. Ashelman failed to specifically characterize his second and fourth claims for habeas relief as federal claims either by (1) referencing specific constitutional provisions or (2) citing to relevant federal case law. *Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir. 2000). As his second and fourth claims for relief were not presented to the Washington State Supreme Court on federal grounds and they are, therefore, unexhausted.

*(i)       Procedural Bar of Unexhausted Claim*

Because Mr. Ashelman's second and fourth claims are unexhausted, the court is presented with a mixed petition containing both exhausted and unexhausted federal claims, which, in itself requires dismissal of the petition. Federal courts "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber,* 125 S. Ct. 1528, 1532-33 (2005). Instead, such petitions "must be dismissed for failure to completely exhaust available state remedies." *Jefferson v. Budge,* 419 F.3d 1013, 2005 WL 1949886 *2 (9th Cir. 2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518-22 (1982)).

Before dismissing the petition, generally the court is required to provide a petitioner with "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.; see also Rhines*, 125 S. Ct. at 1535; *Tillema v. Long*, 253 F.3d 494, 503 (9th Cir. 2001) (court must provide *habeas corpus* litigant with opportunity to amend mixed petition by striking unexhausted claims). However, when a petitioner would be procedurally barred from returning to the state court to address the unexhausted claims, the court need not provide Petitioner with this choice.

REPORT AND RECOMMENDATION - 12

1
2
3

In this case, the record reflects that Mr. Ashelman is now procedurally barred from presenting his unexhausted second and fourth claims to the Washington State courts because of the state rules prohibiting successive petitions, RCW 10.73.140 and RAP 16.4(d).

4
5
6
7
8
9
10
11
12
13
14

If a petitioner fails to obey state procedural rules, the state court may decline review of a claim based on that procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977).  State procedural rules serve an important interest in finality of judgment, and significant harm may result if the federal courts fail to respect those rules. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  If the state court clearly and expressly states that its judgment rests on a state procedural bar, the petitioner is barred from asserting the same claim in a federal habeas corpus proceeding. *Harris v. Reed*, 489 U.S. 255, 263 (1989).  A claim is also barred, despite the absence of a "plain statement," where the petitioner failed to exhaust state remedies and the state courts would now find the claim to be procedurally barred. *Coleman*, 501 U.S. at 735 n.1.

15
16
17
18
19

In all cases in which a state offender has defaulted his federal claims in state court, federal habeas review of the claims is barred unless the offender can demonstrate either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

20
21
22
23
24
25

Washington law prohibits the filing of successive collateral challenges.  RCW 10.73.140; RAP 16.4(d).  Because he previously filed a personal restraint petition, Mr. Ashelman is barred from filing another collateral challenge absent a showing of good cause.  Because his claims are procedurally barred under Washington law, the claims are not cognizable in a federal habeas corpus petition absent a showing of cause and prejudice or actual innocence.

26

REPORT AND RECOMMENDATION - 13

*(ii)      Cause and Prejudice or Actual Innocence*

Unless it would result in a "fundamental miscarriage of justice," a petitioner who procedurally defaults may receive review of the defaulted claims only if he demonstrates "cause" for his procedural default and "actual prejudice" stemming from the alleged errors. *Coleman v. Thompson*, 501 U.S. at 750.  The petitioner must show an objective factor actually caused the failure to properly exhaust a claim. *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir. 1995).  "The fact that [a petitioner] did not present an available claim or that he chose to pursue other claims does not establish cause." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir.), cert. denied, 519 U.S. 1030 (1996).

A petitioner can demonstrate "cause" by showing interference by state officials, the unavailability of the legal or factual basis for a claim, or constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner cannot demonstrate cause to excuse a procedural default where the cause is fairly attributable to the petitioner's own conduct. *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir.), cert. denied, 504 U.S. 944 (1992). Petitioneer's inadequacies and lack of expertise in the legal system do not excuse a procedural default. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 907-09 (9th Cir. 1986).  "An evidentiary hearing is not necessary to allow a petitioner to show cause and prejudice if the court determines as a matter of law that he cannot satisfy the standard." *Clark v. Lewis*, 1 F.3d 814, 820 (9th Cir. 1993).

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997) (quoting *Murray v. Carrier*, 477 U.S. at 496).  "To meet this manifest injustice

REPORT AND RECOMMENDATION - 14

exception, [the petitioner] must demonstrate more than that "a reasonable doubt exists in the light of the new evidence."  *Wood*, 130 F.3d at 379 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  The petitioner must also "make a stronger showing than that needed to establish prejudice."  *Schlup*, 513 U.S. at 327. "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Id.*  "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

Mr. Ashelman cannot show cause and prejudice or an extraneous circumstance that prevented him from raising his claims in a timely filed personal restraint petition.  A review of Mr. Ashelman's personal restraint petition before the Washington Supreme Court reflects that while he raised his first and third claims as federal claims, he raised his second and fourth unexhausted claims as state law claims only.

In addition, Mr. Ashelman cannot show actual innocence.  He has presented no new evidence demonstrating that it is more likely than not that no reasonable juror would have convicted him in the light of new evidence.  *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995). Thus, this is not the kind of extraordinary instance where the petition should be granted despite the absence of a showing of cause.  Mr. Ashelman has not provided the Court with any evidence of cause and prejudice or a fundamental miscarriage of justice.   Because he cannot excuse his procedural default, his second and fourth claims are not cognizable in this federal habeas corpus proceeding.

The court turns now to the merits of Mr. Ashelman's first and third claims.

REPORT AND RECOMMENDATION - 15

*B      Claims 1 and 3  – Violation of Due Process - Doctoring Witness Statements*

This court may not overturn the disciplinary charges simply because the state courts misinterpreted Washington statutes. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).   The court's review here is limited to deciding whether the disciplinary charges violated the Constitution, laws, or treaties of the United States.

When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974), *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), *Neal v. Shimoda*, 131 F.3d 818, 830-31 (9th Cir. 1997).

Revocation of good-time credits is not comparable to a criminal conviction. *Wolff*, 418 U.S. at 562-63.  The fundamental fairness guaranteed by the Due Process Clause and the requirement of sufficient proof do not require courts to set aside decisions of prison administrators that have some basis in fact. *Hill*, 472 U.S. at 456. Therefore, if "some evidence" supports the decision by the hearing officer, the decision satisfies the requirements of proof.  *Id*. 472 U.S. at 455.   Ascertaining whether the disciplinary finding satisfies the "some evidence" standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  *Id*.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.  *Id*.

REPORT AND RECOMMENDATION - 16

1        In his first claim for habeas relief, Mr. Ashelman asserts that the hearing officer was

2  improperly given a continuance of his scheduled disciplinary hearing based on a "doctored"

3  need to obtain witness statements that were already in the hearing officer's possession.  Dkt. 5,

4  p. 7 (CM/ECF pagination).  Mr. Ashelman argues that when the hearing officer asked for the

5  continuance, he was already in possession of Mr. Davis's statement.  *Id.*

6        In his personal restraint petition before the Washington Supreme Court, Mr. Ashelman

7  asserted that the hearing officer violated his rights to due process by obtaining a continuance of

8  his disciplinary hearing because the hearing officer already had a copy of Mr. Davis's

9

10  statement and the hearing officer held the disciplinary hearing in 16 days rather than the 15

11  days required by the Washington Administrative Code (WAC).

12        WAC 137-28-400 states:

13

14          The time limitations expressed in these regulations are not jurisdictional and
          failure to adhere to any particular time limit shall not be grounds for reversal or

15          dismissal of a disciplinary proceeding.

16  Mr. Ashelman does not allege that he was prejudiced in any way by having his disciplinary

17  hearing continued and conducted in 16 days instead of 15.  Thus, pursuant to WAC 137-28-400,

18  the delay is not grounds for reversal or dismissal of his disciplinary proceeding.

19        In addition, Mr. Ashelman provides no authority to support his claim that the hearing

20  officer was required to conduct the disciplinary hearing based on Mr. Davis's statement alone.

21  The record reflects that the hearing officer considered the infraction report, Mr. Ashelman's

22  testimony and two statements of Allen Davis.  Based on Mr. Ashelman's testimony, Officer

23  Dunnington concluded that Mr. Ashelman was awake during the incident and did in fact coach

24

25  another inmate.  Dkt. 17, Exh. 4, Attach. D.  Thus, there was evidence in the record that could

26  support the conclusion reached by Officer Dunnington.

REPORT AND RECOMMENDATION - 17

In his third claim for habeas relief, Mr. Ashelman claims that his due process rights were violated when the hearing officer "had officers re-write statements (after) he already found [Mr. Ashelman] guilty." Dkt. 5, p. 14. In support of this claim, Mr. Ashelman points to a memorandum from Hearing Officer Tony Dunnington dated January 26, 2009, in which Officer Dunnington states, in part:

> This is to inform you the attached supplemental report was received by my office today, 1-26-09. It is also noted this statement from Officer D. Metcalf was received following the hearing conducted on 1-21-09 for WAC violation #651. The original copy of this statement is being submitted into the infraction packet.

Dkt. 5, p. 15 (Exh. E). The supplemental report from Officer D. Metcalf referred to above is dated January 24, 2009. It is attached at Petitioner's habeas petition at page 17 and marked as Exhibit G. In it, Officer Metcalf provides additional details about the incident on September 3, 2008.[3] *Id.*, Exh. G.

As noted above, the record reflects that there was evidence in the record that could support the conclusion that Mr. Ashelman was guilty of the infraction. In addition, a review of both of Officer Metcalf's statements does not reveal evidence of any "doctoring" or inconsistencies. Moreover, as the hearing officer had already found Mr. Ashelman guilty of the 651 infraction based on the evidence before him on January 21, 2009, it is unclear how a

---

[3] In his original statement, Mr. Metcalf stated:

> On 9/3/08 at 0335 I/M Ashelman was coaching I/M Benson #319067 in B108 to soak his sheet with water and to stuff towels in his cell door track to keep it from opening.

Dkt. 17, Exh. 4, Attach. A (Serious Infraction Report); see also Dkt. 5, p. 16 (marked as Exhibit F). In his second statement, Mr. Metcalf stated that he:

> . . . hit the intercom for B108 and heard loud talking but not from Benson. I scanned B tier and saw I/M Ashelman from B104 at his door so I hit the intercom from his cell and heard him say "take a sheet and soak it with water and hold the sheet up in front of you so it will catch most of the spray." Then I hit the intercom for B108 and heard I/M Benson say "they turned off my water." Then I hit the intercom for B104 and heard I/M Ashelman say "soak your sheet in your toilet and stuff towels around your door to keep it from opening."

Dkt. 5, p. 17 (marked as Exhibit G).

REPORT AND RECOMMENDATION - 18

memorandum supplemented and submitted after the hearing date can be considered a violation of

Mr. Ashelman's due process rights.

In its rejection of these claims, the Supreme Court of Washington held:

> A prison disciplinary decision is reviewed only to determine if the action taken was so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding. *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999). A proceeding is fundamentally fair if "some" evidence supports the finding of the hearing officer and the petitioner is afforded minimum due process protections, including notice of the alleged violation, an opportunity to present documentary evidence and call witnesses when not unduly hazardous to safety and correctional goals, and a written statement of the evidence relied on and the reasons for the action. *Id*. at 396-97 (minimum due process protections); *In re Pers. Restraint of Anderson*, 112 Wn.2d 546, 549, 772 P.2d 510 (1989) ("some" evidence).

> Mr. Ashelman argues that his disciplinary hearing was not timely held, that the hearing officer found guilt only because he believed Mr. Ashelman did not like sex offenders, that he should have had a different hearing officer, that the hearing officer "doctored" witness statements, and that he was made to serve 10 days isolation even though he already served that time after his first infraction hearing. But the scant materials Mr. Ashelman provides support none of these claims. He does not show that he was deprived of minimum due process rights or that there was no evidence to support the finding of guilt.

Dkt. 17, Exh. 6, pp. 1-2.

The Washington Supreme Court's adjudication of Mr. Ashelman's first and third claims

was neither contrary to, nor an unreasonable application of federal law governing evidence

claim was neither contrary to, nor an unreasonable application of *Wolff v. McDonnell*, the

governing legal standard for review of such claims.  As noted above, Mr. Ashelman has

provided no support for his claims that he was deprived of minimum due process rights or that

there was no evidence to support the finding of guilt.  Therefore, the undersigned recommends

that Mr. Ashelman's first and third claims for habeas relief be denied.

REPORT AND RECOMMENDATION - 19

1

*SUMMARY CONCLUSION*

2       Based on the foregoing discussion, the undersigned recommends that Mr. Ashelman's

3   habeas petition should be **denied**, and this action **dismissed**.  No evidentiary hearing is

4   required as the record conclusively shows that Petitioner is not entitled to relief.

5

*CERTIFICATE OF APPEALABILITY*

6

7       A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

8   dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA)

9   from a district or circuit judge.  A COA may issue only where a petitioner has made "a

10  substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3).  A

11  petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

12  district court's resolution of his constitutional claims or that jurists could conclude the issues

13  presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537

14  U.S. 322, 327 (2003).

15

16      Based on a thorough review of the record and analysis of the law in this case, the

17  undersigned concludes that Mr. Ashelman is not entitled to a COA with respect to any of the

18  claims asserted in his petition because he has not demonstrated that jurists of reason could

19  disagree with the district court's resolution of his constitutional claims or could conclude the

20  issues presented are adequate to deserve encouragement to proceed further.

21

*WRITTEN OBJECTIONS*

22

23      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

24  Procedure, the parties shall have fourteen (14) days from service of this Report and

25  Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections

26

REPORT AND RECOMMENDATION - 20

1   will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140

2   (1985).

3          Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

4   matter for consideration on **April 2, 2010**, as noted in the caption.

5

6

7          DATED this  12th   day of March, 2010.

8

9

10

11                                          Karen L. Strombom
                                            United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 21